IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 1:21-cr-650 (RDM) |
| | ) | |
| v. | ) | |
| | ) | |
| Paul G. Colbath, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SENTENCING MEMORANDUM**

In *A Moveable Feast*, Ernest Hemingway indicated that when trying to get around writer's block, "[a]ll you have to do is write one true sentence. Write the truest sentence that you know." The truth is that on January 6, 2021, a mob of United States citizens stormed the United States Capitol Complex, and Mr. Colbath was a member of that mob. The truth also is that "[t]he damage that [Mr. Colbath] and others caused that day goes way beyond the several-hour delay in the certification [of the 2020 Presidential election]. It is a damage that will persist in the country for decades." Sentencing Tr. at 69-70, *United States v. Hodgkins*, D.D.C. Cr. No. 1:21-CR-188 (RDM) (D.D.C. Jul 22, 2021), ECF No. 36.

As this Court fashions a sentence for Paul Colbath, however, there are other truths this Court must consider. The truth of Mr. Colbath's individual acts that day. The truth of a quiet man who has lived a thoroughly decent life who made a terrible mistake which cannot be undone. The truth of a man who has, according to his character, acknowledged his trespass against his country and seeks to pay his debt. These, too, are truths associated with this case.

This Court must balance all of these considerations to arrive at a sentence that is "sufficient but not greater than necessary" to accomplish the statutory sentencing factors set forth in 18 U.S.C. § 3553(a)(2). In imposing any sentence, this Court considers to the extent

1

applicable: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant; the need for the sentence to provide rehabilitative services; the applicable guideline sentence (here, the Guidelines do not apply); and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1) – (6). Moreover, under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Sentencing under § 3553(a) therefore requires this Court to start with the minimum sentence permissible and add only so much additional punishment, if any, as is necessary to comply with the statutory purposes contained in § 3553(a).

Here, a sentence of one year's probation, community service, and the $500 restitution Mr. Colbath has readily agreed to pay is sufficient but not greater than necessary to accomplish the purposes of sentencing in this case.[1]

**Nature and Circumstances of the Offense – 18 U.S.C. § 3553(a)(1)**

In the context of the overall riot that occurred at the United States Capitol on January 6, 2021, the nature and circumstances of the Mr. Colbath's offense are that he knowingly paraded, demonstrated or picketed in a United States Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). Mr. Colbath does not contest the fact that prior to his entry into the Capitol, he

---

[1] If this Court imposes probation, Mr. Colbath respectfully requests this Court suspend the mandatory drug testing requirement in this matter. Reliable sentencing information indicates Mr. Colbath presents an extremely low risk relating to abuse of any illicit substance. *See* 18 U.S.C. §§ 3563(a)(5) and 3583(d).

took a variety of photographs and short videos, saw individuals climbing scaffolding, smelled tear gas, and heard the sound of breaking glass. Mr. Colbath entered the Senate side of the Capitol Building through a fire door that had been breached by others. Mr. Colbath walked at most about 50 feet into the Capitol, spent a total of 6 minutes inside the building, and did not engage in any destructive or aggressive behavior.

While he was in the Capitol Building, the video evidence establishes that at no point did Mr. Colbath raise his hands in a triumphant manner, yell or join others in chanting slogans, nor did he take out his telephone to videotape or photograph his experience while inside the building. Instead, in the midst of a hallway crowded with a raucous, destructive mob, Mr. Colbath turned to help someone. It was at this point that Mr. Colbath indeed raised his hands. But he did so to put his arms around an individual's shoulder to safely guide that person through the vociferous and roiling crowd:



3

After spending about 6 minutes inside the Capitol, Mr. Colbath exited on his own accord. After he left the building, Mr. Colbath remained on the Upper West Terrace adjacent to the Capitol Building for some time. However, when he learned that a curfew had been imposed, he departed the area in sufficient time to ensure he would be in his hotel room in compliance with that curfew. He returned to South Carolina the following day.

Mr. Colbath has never contested his guilt in this matter. When interviewed by the FBI on January 18, 2020, he readily admitted his involvement in the riot and has thereafter done so "on multiple occasions." Gov't Sentencing Mem. at 12, ECF No. 28. As acknowledged by the Government, Mr. Colbath's "words and actions indicate sincere remorse." *Id.* at 14.

**History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)**

The PSR provides this Court with accurate information about Mr. Colbath and his personal history. He is currently 65 years old and was raised primarily in Massachusetts. He and his family of origin are not close.

Mr. Colbath entered the Army in 1978, and upon his honorable discharge, he remained in the Massachusetts and New Hampshire area. Throughout his adult life, Mr. Colbath has been gainfully employed. He has no criminal record. He married in 1997 and he and his wife moved to North Carolina in 2009 to further her education. In 2011, they moved a short distance into South Carolina.

Mr. Colbath has helped raise two stepsons during his stable marriage. Mr. Colbath is a serious and sensitive person, who has quietly served his neighbors through positive friendships and community involvement. As for social media, Mr. Colbath uses only one email account and did not—and does not—have any other social media presence.

4

**The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from the Defendant, and Provide the Defendant with Needed Correctional Treatment -- § 3553(a)(2))**

Respect for the law is promoted by punishments that are fair. Fairness is not gauged simply by those sentences that punish for punishment's sake. Just punishment cannot simply be the most severe punishment available to the Court. Were that the case, maximum sentences would be the norm. Here, a period of home detention as requested by the Government is not warranted, nor is a three-year period of probation.

The total time Mr. Colbath spent in the Capitol building was approximately 6 minutes. He did not assault anyone or engage with law enforcement. The Government includes photos in its Sentencing Memorandum of the initial breach of the fire door and the violence that those law enforcement officers encountered from the oncoming crowd. *See id.* at 4. Mr. Colbath was in no way involved in this violence.

While he remained on the Capitol Complex grounds for some time after he exited the building, he returned to his hotel in sufficient time to comply with the 5:00 p.m. curfew which had been imposed. The Government does not contest this fact. *See id.* at 8.

At no point has Mr. Colbath denied his involvement in the events of January 6. He has not destroyed or hidden evidence of his actions on that day. Indeed, he readily spoke with authorities, admitted his involvement and expressed extreme remorse; followed up with emails to the FBI agent again taking full responsibility for his acts and clarifying details of their conversation; provided authorities with his telephone and its passcode; affirmatively identified himself and his location when authorities showed him pictures of his actions during a non-custodial interview; and self-surrendered on October 28, 2021. *See id.* at 8-9.

As to deterrence, the Government contends that a period of home detention should be imposed based in part upon "his role in helping the crowd advance into the Capitol Building." *Id.* at 2. Aside from his own entry into the Capitol, Mr. Colbath took no other action to "help[ ] the crowd advance into the Capitol Building." *Id.*

The Government also requests that home detention be imposed based upon its hope that home detention will "ensure that today's remorse and level-headedness will not fade during the next emotionally-charged mass gathering." *Id.* at 14. But this Court is required to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing. A term of probation without home detention meets this overarching statutory directive.

Mr. Colbath's background and history, his age, his lack of criminal history, and the almost nonexistent likelihood of recidivism here establish that a sentence of one year of probation, community service, and the restitution Mr. Colbath has agreed to pay will adequately address the need for his sentence to promote respect for the law, provide just punishment, operate to deter Mr. Colbath and others from engaging in any future acts such as what happened on January 6, and protect the public from Mr. Colbath.

**The Kinds of Sentences Available, the Advisory Guidelines, and the Advisory Guidelines Range – 18 U.S.C. § 3553(a)(4)-(5)**

Here, the Guidelines do not apply to Mr. Colbath's case. *See* U.S.S.G. § 1B1.9. The statutory provisions associated with Mr. Colbath's conviction, a Class B misdemeanor offense, provide that this Court may impose a sentence of up to six months' imprisonment or a term of probation, a fine, and restitution. 18 U.S.C. § 3551(b). If this Court imposes a term of imprisonment, supervised release is not statutorily authorized. 18 U.S.C. § 3583(b)(3). If this Court imposes a probationary sentence, a term of up to five years is permitted by statute. 18

U.S.C. § 3561(c)(2). A fine of up to $5,000 is permitted, 18 U.S.C. § 3571(b)(6), and a special assessment fee of $10.00 is applicable, 18 U.S.C. § 3103(a)(1)(A)(ii).

**The Need to Avoid Unwarranted Sentencing Disparities – 18 U.S.C. § 3553(a)(6)**

Section 3553(a)(6) of Title 18 is aimed primarily at eliminating national sentencing inequities, not differentiating between the sentences of co-conspirators. *See United States v. Rivera-Gonzalez*, 626 F.3d 639, 648 (1st Cir. 2010) (noting such). This Court is in the unique circumstance of having readily available information about the sentences of other defendants who have been charged with the same offense as Mr. Colbath related to the events of January 6, as evidenced by the table attached to the Government's sentencing memorandum. In addition to the cases noted by the Government, listed below are a few examples of individuals already sentenced who are comparators to Mr. Colbath:

*Eliel Rosa*, No. 1:21-cr-68 (TNM): Mr. Rosa was inside the Capitol for approximately 20 minutes and took photos while he was inside. He thereafter made posts to Facebook. Mr. Rosa voluntarily contacted the FBI on January 9, 2021. The Government sought 30 days' home detention, 36 months' probation, 60 hours' community service, and $500 in restitution. Mr. Rosa was sentenced to 12 months' probation, 100 hours community service, and $500 in restitution.

*Jonathan Sanders*, 1:21-cr-384 (CJN): Mr. Sanders took photographs while he was outside the Capitol, was inside the Capitol for approximately ten minutes, and created videos of events inside the building. An anonymous tip to the FBI reported that he "bragged" he was inside the building. He initially told the FBI he did not enter the building. The Government sought two months' home detention, 36 months' probation, 60 hours' community service, and $500 in restitution. Mr. Sanders was sentenced to 36 months' probation, 60 hours of community service, and $500 in restitution.

*Andrew Wrigley*, 1:21-cr-42 (ABJ): Mr. Wrigley was inside the Capitol for approximately one minute and thereafter made Facebook posts which included photos and videos. The Government sought two months' home detention, 36 months' probation, 60 hours community service, and $500 in restitution. Mr. Wrigley was sentenced to 18 months' probation, a $2,000 fine, 60 hours' community service, and $500 in restitution.

*Nicholas Reimler*, 1:21-cr-239 (RDM): Mr. Reimler was inside the Capitol for approximately twenty minutes and posted videos on Snapchat of what was occurring inside the building with the notation "LOL." The Government sought two months' home detention, 36 months' probation, 60 hours' community service, and $500 restitution. This Court sentenced Mr. Reimler to three years' probation with one month home detention as a condition of that probation, 60 hours' community service, and $500 in restitution.

*Esther Schwemmer*, 1:21-cr-364 (DLF): Ms. Schwemmer was inside the Capitol for approximately fifteen minutes, took photos while she was inside the building, and left when she was instructed to do so by law enforcement. She was sentenced to two years' probation, sixty hours of community service, and $500 in restitution.

Mr. Colbath actions were not violent or aggressive in either word or deed. He did not force his way into the Capitol building or climb through a broken window, nor did he destroy or deface any property. He did not barge past law enforcement officers. Instead, he followed a crowd into the building, and he left on his own accord after approximately 6 minutes. Mr. Colbath made no social media posts and was cooperative with the FBI from the beginning of the prosecution of this matter. Although not excuses, when viewed in context of the above defendants' actions and that of many other of the January 6 defendants, Mr. Colbath's conduct falls on the extremely low end of the spectrum of what happened that day. The sentence

8

requested by Mr. Colbath will therefore not create an unwarranted sentencing disparity with other defendants.

**Conclusion**

Mr. Colbath was a participant in the dreadful riot that occurred at the Capitol on January 6, 2021. He has admitted his guilt, is ready to pay his debt to society, and is determined to move forward with his otherwise regular life in a positive manner. He respectfully requests this Court impose a sentence of one year of probation, community service, and $500 in restitution.

Respectfully submitted,

s/*Emily Deck Harrill*
Emily Deck Harrill
Assistant Federal Public Defender (DSC #11799)
Federal Public Defender's Office
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: 803.765.5079
*Emily_Harrill@fd.org*

Columbia, South Carolina
March 30, 2022